**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DONALD JAMES PECK, | : | CIVIL NO.: 1:24-cv-00702 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FRANK BISIGNANO,[1] | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### I. Introduction.

In this social security action, Plaintiff Donald James Peck seeks judicial

review of the final decision of the Commissioner of Social Security

("Commissioner") denying his claim for supplemental security income under Title

XVI of the Social Security Act.  We have jurisdiction under 42 U.S.C. §§ 405(g)

and 1383(c)(3).  For the reasons set forth below, we will affirm the

Commissioner's decision and enter judgment in favor of the Commissioner.

---

[1] Frank Bisignano is now the Commissioner of Social Security, and he is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "[t]he officer's successor is automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

## II.  Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 8–1* to *8–7*.[2]  On October 28, 2021, Peck filed an application for supplemental security income, alleging that he has been disabled since March 31, 2021. *See Admin. Tr.* at 100, 251–59.  After the Commissioner denied his claim at the initial and reconsideration levels of administrative review, *id.* at 153–69, 176–79, Peck requested an administrative hearing, *id.* at 180–81.  On May 2, 2023, Peck—who was represented by a non-attorney representative from North Penn Legal Services—as well as a vocational expert testified at a video hearing before Administrative Law Judge Edward Brady (the "ALJ"). *Id.* at 126–52.  On May 22, 2023, the ALJ denied Peck's claim for benefits. *Id.* at 97–125.  Peck appealed the ALJ's decision to the Appeals Council, which denied his request for review. *Id.* at 1–7.[3]  This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

---

[2] Because the facts of this case are well known to the parties, we do not repeat them here in detail.  Instead, we recite only those facts that bear on Peck's claims.

[3] Peck submitted to the Appeals Council medical records from after the date of the ALJ's decision. *See Admin. Tr.* at 8–92.  The Appeals Council noted that the evidence was submitted, but it concluded that the evidence does not relate to the period at issue, which was through May 22, 2023, the date of the ALJ's decision. *Id.* at 2.  Thus, the Appeals Council did not consider that additional evidence. *Id.*  It explained to Peck, however, that if he wants the Commissioner to consider whether he is disabled after May 22, 2023, he must file a new claim. *Id.*

In April 2024, Peck, proceeding pro se, began this action by filing a complaint seeking review of the Commissioner's decision denying his claim. *See Doc. 1.* He contends that the Commissioner's decision is not supported by substantial evidence. *Id.* at 3. And he requests that the court award him benefits or, in the alternative, remand the case for a new hearing. *Id.* at 3–4.

The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 9.* The Commissioner filed an answer and a certified transcript of the administrative proceedings. *Docs.7, 8.* The parties filed briefs, *see docs. 12, 14, 15*, and this matter is ripe for decision.

## III.  Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103. Substantial evidence "means—

and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).  "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Peck is disabled, but whether substantial evidence supports the Commissioner's finding that he is not disabled and whether the Commissioner correctly applied the relevant law.

**B. Initial Burdens of Proof, Persuasion, and Articulation.**

To receive benefits under Title XVI of the Social Security Act, a claimant must demonstrate an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

Unlike with disability insurance benefits under Title II of the Social Security Act, "[i]nsured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits" under Title XVI of the Social Security Act. *Snyder v. Colvin*, No. 3:16-CV-01689, 2017 WL 1078330, at *1 (M.D. Pa. Mar. 22, 2017).  Supplemental Security Income "is a federal income supplement program funded by general tax revenues (not social security taxes)" "designed to help aged, blind or other disabled individuals who have little or no income." *Id*.

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 416.920(a).  Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in

substantial gainful activity; (2) whether the claimant has a severe impairment;

(3) whether the claimant's impairment meets or equals a listed impairment;

(4) whether the claimant is able to do his or her past relevant work; and

(5) whether the claimant is able to do any other work, considering his or her age,

education, work experience, and residual functional capacity ("RFC"). 20 C.F.R.

§ 416.920(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019). The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. § 416.945(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 416.945(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical

impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites. Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999). The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

## IV. The ALJ's Decision.

On May 22, 2023, the ALJ denied Peck's claim for benefits. *Admin. Tr.* at 97–125. He proceeded through the five-step sequential-evaluation process.

### A. Step One.

At step one of the sequential-evaluation process, the ALJ found that Peck had not engaged in substantial gainful activity since October 28, 2021, the date he filed his application for benefits. *Id.* at 102.

## B.  Step Two.

At step two of the sequential-evaluation process, the ALJ found that Peck had the following severe impairments: degenerative disc disease of the lumbar spine, migraine headaches, vertigo, bipolar disorder, anxiety, depression, attention deficit/hyperactivity disorder, and obesity. *Id*.

The ALJ also found that Peck had the following medically determinable impairments: "prediabetes, asthma, cannabis abuse, gastroesophageal reflux disease (GERD), gastritis, irritable bowel syndrome, acute renal failure, hidradenitis suppurative, hypertension, heart murmur, tinnitus, and allergic rhinitis." *Id*. at 103.[4]  The ALJ concluded, however, that "the record does not establish specific limitations directly related to these impairments nor does the record establish that these impairments are uncontrolled despite medication, have met the twelve month durational requirement or have resulted [in] more than a minimal effect on the claimant's ability to perform basic work activities." *Id*.  And so, the ALJ concluded that these impairments were not severe. *Id*.  The ALJ noted that he nevertheless "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity." *Id*.

---

[4] For readability purposes, here—and elsewhere—when citing or quoting the ALJ's decision, we omit the ALJ's citations to the record.

### C. Step Three.

At step three of the sequential-evaluation process, the ALJ found that Peck did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 103–08. Specifically, the ALJ considered Listing 1.15 (Disorders of the skeletal spine resulting in compromise of a nerve root), and Listing 2.07 in connection with Peck's vertigo. *Id.* at 103–04. He also evaluated Peck's headaches under SSR19-4 and his obesity under SSR 19-2p. *Id.* at 104–05.

The ALJ further considered Listings 12.04, 12.06, and 12.11 in connection with Peck's mental impairments. *Id.* at 105–08. In doing so, he considered the four broad areas of mental functioning set forth in the disability regulations for evaluating mental disorders[5] and in the listings, known as the paragraph B criteria,[6]

---

[5] When "mental impairments are at issue, additional inquiries are layered on top of the basic five-step disability analysis." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 202 (3d Cir. 2019). The regulations set forth a "special technique" used for evaluating mental impairments. *See* 20 C.F. R. § 416.920a. As part of that "special technique," a claimant's degree of functional limitation is rated in four broad functional areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* at § 416.920a(c)(3). A claimant's degree of limitation in these functional areas is rated using "the following five-point scale: None, mild, moderate, marked, and extreme." *Id.* at § 416.920a(c)(4). The ratings in these four broad functional areas are used at Step 2 to determine if the claimant has a severe mental impairment, and if the claimant has a severe mental impairment, the ratings are also used at Step 3 to determine if the claimant's severe mental impairment meets or equals a listed mental disorder. *Id.* at § 416.920a(d).

and he determined that Peck had moderate limitations in each area. *Id*. at 105–07. The ALJ recognized that the paragraph B criteria are not an RFC; rather, they "are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process[,]" and the RFC "assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment." *Id*. at 108. And he asserted that his RFC that follows "reflects the degree of limitation" he "has found in the 'paragraph B' mental function analysis." *Id*.   The ALJ also determined that Peck did not satisfy the paragraph C criteria. *Id*. at 107.

### D.  The RFC.

The ALJ then determined that Peck had the RFC to do light work[7] with some limitations. *Id*. at 108.  He concluded that Peck could only perform "jobs which required no more than simple instructions, with frequent

---

[6] The listings for mental disorders contain either two paragraphs (A and B) or three paragraphs (A, B, and C). *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00.A.2.  Except as to Listing 12.05 (intellectual disorder), paragraph B of each of the listings for the mental disorders sets forth the same four functional criteria as set forth in 20 C.F.R. § 416.920a, and the listings use the same five-point rating scale as those regulations. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00.A.2.b, 12.00.E, 12.00.F.  This is what the ALJ is referring to when he refers to the paragraph B criteria.

[7] *See* 20 C.F.R. § 416.967(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be

interaction with the public, supervisors, coworkers and occasional changes to workplace routine and setting." *Id*.  He also concluded that Peck "should not work on ladders, ropes, or scaffolds, and should not work around dangerous moving machinery or at unprotected heights." *Id*.

In making this RFC assessment, the ALJ considered Peck's testimony and assertions regarding his limitations, Peck's medical records and treatment notes, his activities of daily living, the medical opinions in the record, and the statements from third parties. *Id*. at 109–19.  And he summarized his finding that Peck has the RFC to do light work with some limitations as follows:

> In sum, the claimant alleges physical and mental limitations that would preclude him from sustaining regular and continuous work.  However, the nature, scope, and findings from his longitudinal treatment records are not supportive of the intensity or persistence of his subjective allegations, and these records are not supportive of more restrictive findings than adopted herein.  The residual functional capacity is supported by the medically adopted diagnostic techniques, clinical findings, level of treatment, activity level of the claimant, and testimony of record.  When considered as a whole, the evidence reasonably supports a finding that the claimant is limited by his impairments; however, he is capable of performing work within the above parameters on a sustained and continuous basis.

*Id*. at 119.

---

considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.").

**E.  Step Four.**

At step four of the sequential-evaluation process, the ALJ found that Peck had no past relevant work. *Id.* at 119.

**F.  Step Five.**

At step five of the sequential-evaluation process, considering Peck's age, education, work experience, and RFC, as well as the testimony of a vocational expert, the ALJ found that there were jobs—such as marker/merchandizer, order caller, and laundry classifier—that exist in significant numbers in the national economy that Peck could perform. *Id.* at 120.

In sum, the ALJ concluded that Peck has not been disabled since October 28, 2021 (which is the date he filed his application). *Id.* at 121.  Thus, he denied Peck's claim for benefits. *Id.*

**V.  Discussion.**

The local rules of court address the requirements for the argument section of a Social Security plaintiff's brief:

> The argument shall be divided into sections separately addressing each issue and shall set forth the contentions of plaintiff with respect to each issue and the reasons therefor. Each contention must be supported by specific reference to the

> portion of the record relied upon and by citations to statutes,
> regulations and cases supporting plaintiff's position.

M.D. Pa. L. R. 83.40.4(c). Peck's brief fails to comply with this rule.

Nevertheless, given the Peck is proceeding pro se, we liberally construe his brief to raise the following issues: (1) the ALJ erred in analyzing the opinion evidence and setting the RFC; (2) the ALJ mischaracterized the evidence regarding Peck's activities of daily living; (3) the ALJ erred with respect to the vocational expert's testimony; and (4) the ALJ erred in finding Peck not disabled even though there was substantial evidence that would support a finding that Peck was disabled. We will address each issue in turn. Before we do so, however, we address Peck's reliance on evidence that post-dates the ALJ's decision.

### A. The ALJ did not err in failing to consider medical records that were submitted after the hearing, and Peck has not shown a basis for remand based on new evidence.

In his opening brief, Peck suggests that the Commissioner ignored evidence. He asserts:

> It is clear there are ignored and unused facts in this case. Many of the tests and diagnosis the Administrative Law Judge said were missing have been done and were given as evidence as well as letters from my psychologist and therapist insisting on me not working with the state of mind I've been in and all of it was ignored and/or denied and then I was informed they didn't have enough proof to grant me disability. I pray for the continuation of this trial.

*Doc. 12* at 2.  To the extent that Peck is asserting that the ALJ failed to consider evidence that was before him when he issued his decision, Peck fails to point to what evidence in particular the ALJ failed to consider.  And from our review of the record before the ALJ and the ALJ's decision is not readily apparent that the ALJ failed to consider any evidence that was before him.

Rather, it appears that Peck is referring to the evidence that he submitted to the Appeals Council after the ALJ's decision.  As noted, above, the Appeals Council informed Peck that the evidence did not relate to the period in question, but that if he wanted the Commissioner to consider whether he is disabled after May 22, 2023, he must file a new claim. *See supra* n.3.

Peck makes no argument for how the ALJ could have erred by failing to consider records that were not submitted until after the ALJ's decision.  And there is no basis for any such argument.  Where, as here, "the Appeals Council denies the request for review, the ALJ's decision is the Commissioner's final decision." *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001).  "No statutory authority (the source of the district court's review) authorizes the court to review the Appeals Council decision to deny review." *Id*. at 594.  Rather, "[i]f the Appeals Council denies the request for review, the ALJ's decision is the Commissioner's final decision." *Id.* at 592.  And "[f]or purposes of judicial review, the 'record' is 'the evidence upon which the findings and decision complained of are based.'" *Id*. at

14

594 (quoting 42 U.S.C. § 405(g) (Sentence Three)).  In other words, when the

Appeals Council denies review, the record "is the information that was before the

ALJ, the final administrative decisionmaker . . . ." *Id*. at 594.  It is based on that

record that the court determines whether the ALJ's decision is supported by

substantial evidence. *Id*. ("No statutory provision authorizes the district court to

make a decision on the substantial evidence standard based on the new and

material evidence never presented to the ALJ.").  Thus, "[e]vidence submitted after

the administrative law judge's decision cannot be used to argue that the

administrative law judge's decision is not supported by substantial evidence."

*Ficca v. Astrue*, 901 F. Supp. 2d 533, 544 (M.D. Pa. 2012).  Accordingly, we reject

Peck's suggestions that the ALJ erred by failing to consider the additional

evidence.

　　　　We note that although evidence not before the ALJ cannot be used to

conclude that the ALJ's decision is not supported by substantial evidence, such

evidence can be considered to determine whether to remand under Sentence Six of

42 U.S.C. § 405(g). *Matthews*, 239 F.3d at 592.  Sentence Six of § 405(g) provides,

in pertinent part:

> The court . . . may at any time order additional evidence to be taken
> before the Commissioner of Social Security, but only upon a showing
> that there is new evidence which is material and that there is good
> cause for the failure to incorporate such evidence into the record in a
> prior proceeding[.]

42 U.S.C. § 405(g).  The court may remand the case to the Commissioner under Sentence Six if three requirements are met: (1) the evidence is new; (2) the evidence is material; and (3) and there is good cause for why the claimant did not present the evidence to the ALJ. *Matthews*, 239 F.3d at 593.  "An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." *Szubak v. Sec'y of Health & Hum. Servs.*, 745 F.2d 831, 833 (3d Cir. 1984).  Here, Peck makes no argument regarding the elements of a remand under Sentence Six of 42 U.S.C. § 405(g).  And he fails to show that the evidence he presented to the Appeals Council is new and material and that there was good cause for not presenting it to the ALJ.  Thus, we will not consider the additional evidence submitted by Peck to the Appeals Council, and we will not remand under Sentence Six based on this evidence.

In addition to the evidence the Peck submitted to the Appeals Council, Peck attached additional evidence to his reply brief. *See doc. 15-1*.  This evidence also post-dates the ALJ's decision. *Id*.  And Peck has made no argument that this evidence is material.  Accordingly, we will not consider this evidence when reviewing the ALJ's decision, and we will not remand under Sentence Six based on this evidence.

**B.  The ALJ did not err in analyzing the opinion evidence and setting the RFC.**

Peck contends that multiple physicians and specialists have told him that he should not be working.  But Peck does not point to evidence that was before the ALJ that the ALJ failed to consider.  Rather, there were conflicting medical opinions before the ALJ, and the ALJ analyzed those opinions in determining Peck's RFC.

"The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).  The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett*, 220 F.3d at 121 (quoting *Hartranft*, 181 F.3d at 359 n.1).  In assessing a claimant's RFC, the ALJ must consider all the evidence of record. *Burnett*, 220 F.3d at 121.  "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason*, 994 F.2d at 1066).  The court's "review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Wilder v. Kijakazi*, 1:20-CV-492, 2021 WL 4145056, at *6 (M.D. Pa. Sept. 9, 2021); *see also Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002) ("We examine the ALJ's conclusions as to [the claimant's]

17

residual functional capacity with the deference required of the substantial evidence standard of review.").

Further, "[s]urveying the medical evidence to craft an RFC is part of the ALJ's duties." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). And "[i]n evaluating medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009). In fact, in evaluating the medical opinion evidence of record, "the ALJ is not only entitled but required to choose between" conflicting medical opinions. *Cotter,* 642 F.2d at 705.

Under the current regulations, the ALJ evaluates the persuasiveness of medical opinions and prior administrative medical findings using the following factors: (1) supportability, (2) consistency, (3) relationship with claimant, (4) specialization, and (5) other factors. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The most important factors are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must explain how he or she "considered the supportability and consistency factors for a medical source's medial opinions or prior administrative medical findings in" his or her determination or decision. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may, but is not required to, explain how he or she considered the remaining three factors in determining the persuasiveness of a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2),

416.920c(b)(2).  But if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

In setting the RFC, the ALJ must also clearly articulate his or her reasoning. In other words, the ALJ must "set forth the reasons for his decision" to allow for meaningful judicial review. *Burnett*, 220 F.3d at 119 (citing *Cotter*, 642 F.2d at 704–05).  Although an ALJ need not "use particular language or adhere to a particular format in conducting his analysis," the ALJ must ensure "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).  The ALJ's decision must set out "a clear and satisfactory explication of the basis on which it rests." *Cotter*, 642 F.2d at 704.  If an ALJ "has not sufficiently explained" how he or she considered all the evidence "'to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" *Dantzler v. Saul*, No. 3:16-CV-2107, 2019 WL 5569466, at *1 (M.D. Pa. Oct. 28, 2019) (quoting *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979)).

Here, although there were competing medical opinions, the ALJ analyzed those opinions and explained why he credited some over others.  Thus, we reject Peck's suggestion that the ALJ erred in determining that he could work even

though multiple physicians and specialists have told Peck that he should not be

working.

### C. The ALJ did not mischaracterize the evidence regarding Peck's activities of daily living.

Peck suggests that the ALJ mischaracterized the evidence. He asserts that

the ALJ falsely stated that he could dress and shower himself when, in fact, he

needs help, and evidence of such was presented to the ALJ.

In response to the ALJ's question at the hearing whether he was independent

in taking care of himself, Peck testified that his fiancé assisted him:

> At times where I have the inflammation in my stomach
> and the vomiting fits, Dawn does assist me in washing myself
> up because I'm not exactly perfect with the, projecting the
> vomit where it needs to go at that point. So I have to bathe.
> She gives me assistance. Putting my socks and shoes on are a
> continuous problem for me with my bloating and just the severe
> cramping that I have. When I lean over and compress my
> stomach so far, I could easily just upchuck on the floor right
> there at my feet.
>             . . .
> So Dawn helps me every day putting my socks on and off
> of my feet without me having to bend and hurt myself in any
> type of way.

*Admin. Tr.* at 142–43.

The ALJ cited the above testimony. *See Admin. Tr.* at 109 ("He stated that

. . . he needs assistance at time[s] with showering because he vomits; his fiancée

helps him with his socks and shoes daily because otherwise, the bending over

20

would cause him to vomit . . . .").  At other places in his decision, however, the

ALJ asserted that Peck "indicated that he showered and dressed himself daily but

was not always motivated to do so[.]" *Id.* at 105, 114; *see also id.* at 106 ("Despite

the foregoing, the claimant performs his activities of daily living

independently[.]"); *id.* at 107 (same): *id.* at 109 ("[H]e reported during the

consultative exams in March 2022 that he shared household chores and shopping

with his fiancée, assisted with childcare, showered and dressed himself, drove his

car, managed money, enjoyed working on cars, playing video games, outdoor

activities, social media, music, television, and sports."); *see also id.* at 111

(similar); *id.* at 118 ("showed and dressed himself").  In making these latter

statements, the ALJ cited to the reports of two consultative examiners.[8]

    The ALJ did not mischaracterize the evidence as suggested by Peck.  Rather,

the cited to both Peck's testimony and to what the consultative examiners reported

---

    [8] *See Admin. Tr.* at 465 (report of C.R.N.P. Tara Cywinski) ("ACTIVITIES OF DAILY LIVING:  He cooks two to three times a week and cleans daily.  His fiancee does the laundry.  He jointly does shopping with his fiancee.  He assists with childcare.  He showers, bathes, and dresses himself daily without assistance. He likes to watch TV, listen to the radio, go online for social media activities, play video games on his mobile device, play sports, socialize with friends, and go outside.  Hobby:  It  says motor head."); *id.* at 453 (report of Dr. Jennifer Betts) ("MODE OF LIVING:  The claimant reported that he can physically dress, bathe, and groom himself on a daily basis, but is not always motivated to do so.  He does the household tasks such as cooking, cleaning, laundry, and shopping together with his fiancee.  He manages the money for himself.  He does drive.  The claimant has his fiancee and several friends for support.  He enjoys working on cars, playing video games, outdoor activities, social media, music, TV, and sports.").

Peck had said about his ability to dress and shower himself.  And he found what the consultative examiner's reported Peck had said more consistent with the other evidence in the record. *Id.* at 118–19.  Further, "an ALJ may properly consider a plaintiff's activities of daily living when evaluating [his] subjective complaints of pain or other symptoms." *Thomas v. O'Malley*, No. 3:22-CV-01774, 2024 WL 1333033, at *5 (M.D. Pa. Mar. 28, 2024) (citing *Turby v. Barnhart*, 54 F. App'x 118, 122 n.1 (3d Cir. 2002)).  In fact, a claimant's daily activities is one of the factors that the ALJ is required to consider when evaluating a claimant's symptoms and limitations. 20 C.F.R. § 404.1529(c)(3)(i).

Here, the ALJ specifically noted that Peck "has some limitations performing" his activities of daily living, that none of Peck's activities were dispositive, but "taken together and considered in conjunction with the . . . medical evidence of record, they suggest that [Peck] can perform work within the above parameters on a sustained and continuous basis." *Admin. Tr.* at 119.  While a different factfinder may have weighed Peck's activities of daily living differently, the ALJ did not err in considering them as one among other factors that figured into his decision.  And contrary to Peck's suggestion, he did not mischaracterize the evidence.

### D. The ALJ did not err with respect to the vocational expert's testimony.

Peck contends that the vocational expert testified at the hearing that he was "completely unemployable clear across the board." *Doc. 12* at 1. Although Peck cites to "Hearing Testimony" in general, *see id.*, he has not provided a specific citation to the record where the vocational expert so testified. And review of the hearing transcript shows that the vocational expert did not so testify. *See Admin. Tr.* at 149–51 (testimony of vocational expert Dr. Nathalie Mizelle). Rather, in response to three hypothetical questions, the vocational expert testified as to whether someone the same age as Peck and with the same education and experience as Peck but with varying limitations as set forth by the ALJ could perform jobs in the state, local, or national economy. *Id.*

As to the first hypothetical, the ALJ asked the vocational expert to assume that the hypothetical person could do a limited range of light duty work but "this individual will be limited to jobs which require no more than simple instructions with frequent interaction with the public, supervisor and co-workers, but only occasional changes to the work place routine and setting" as well as no work on ladders, ropes, or scaffolds, around dangerous moving machinery, or unprotected heights." *Id.* at 150. In response, the vocational expert identified three positions—marker, merchandiser; order caller; and laundry classifier—that such person could

do. *Id.* In addition to the above limitations, in the second hypothetical, the ALJ

added limitations for the hypothetical person being off task up to 20% of the work

day, and as to the third hypothetical, the ALJ added that the hypothetical person

would fail to appear for work, arrive late, or leave early four times a month. *Id.* at

150–51. In response to those hypotheticals, the vocational expert testified that

those limitations "would eliminate all work." *Id.*

The United States Court of Appeals for the Third Circuit has held that a

vocational expert's testimony is not substantial evidence if the ALJ did not include

in the hypothetical to the vocational expert all the claimant's impairments:

> Discussing hypothetical questions posed to vocational experts,
> we have said that "[w]hile the ALJ may proffer a variety of
> assumptions to the expert, the vocational expert's testimony
> concerning a claimant's ability to perform alternative
> employment may only be considered for purposes of
> determining disability if the question accurately portrays the
> claimant's individual physical and mental impairments."
> *Podedworny,* 745 F.2d at 218. A hypothetical question posed to
> a vocational expert "must reflect *all* of a claimant's
> impairments." *Chrupcala v. Heckler,* 829 F.2d 1269, 1276 (3d
> Cir.1987) (emphasis added). Where there exists in the record
> medically undisputed evidence of specific impairments not
> included in a hypothetical question to a vocational expert, the
> expert's response is not considered substantial evidence.
> *Podedworny,* 745 F.2d at 218 (citing *Wallace v. Secretary of
> Health & Human Servs.,* 722 F.2d 1150, 1155 (3d Cir.1983)).

*Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002). But an ALJ is not required

"to submit to the vocational expert every impairment *alleged* by a claimant."

*Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (italics in original).

24

Rather, "the ALJ must accurately convey to the vocational expert all of a claimant's *credibly established limitations.*" *Id*. (italics in original) (citation and footnote omitted).

"[O]bjections to the adequacy of hypothetical questions posed to a vocational expert often boil down to attacks on the RFC assessment itself." *Id*. at 554 n.8.  A claimant may claim that the ALJ erred by relying on the testimony of the vocational expert "because the ALJ failed to convey limitations to the vocational expert that were properly identified in the RFC assessment." *Id*.  Or a claimant may claim that the ALJ erred by relying on the testimony of the vocational expert "because the ALJ failed to recognize credibly established limitations during the RFC assessment and so did not convey those limitations to the vocational expert." *Id*.  "Challenges of the latter variety . . . are really best understood as challenges to the RFC assessment itself." *Id*.

Here, the ALJ concluded that the limitations set forth in the first hypothetical were credibly established, but not the limitations set forth in the second or third hypothetical to the vocational expert.  And as set forth above, the ALJ did not err in setting the RFC.  Thus, it was not error for the ALJ to rely on the vocational expert's testimony as to the first hypothetical.

### E.  The ALJ did not err in finding Peck not disabled even though there was substantial evidence that would support a finding that Peck was disabled.

Peck further contends that there is substantial evidence that supports that he is disabled, which according to Peck, the ALJ omitted or refused to acknowledge. But Peck has not pointed to specific evidence that the ALJ failed to consider.  And the question is whether substantial evidence supports the ALJ's decision, not whether substantial evidence supports Peck's position.  In effect, Peck suggests that the court accept his analysis of the evidence over the analysis set forth by the ALJ.  But we cannot reweigh the evidence. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356. 359 (3d Cir. 2011) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations."); *Rutherford*, 399 F.3d at 552 ("In the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder.'" (citation omitted)).  And "[t]he presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009).

Here, the ALJ fulfilled his duty in evaluating the evidence and explaining why he chose to credit some evidence over other evidence.  In sum, because the

26

ALJ reviewed the evidence and adequately explained his findings, the ALJ's

decision is supported by substantial evidence.

## VI.  Conclusion.

For the foregoing reasons, we will affirm the decision of the Commissioner.

An appropriate order follows.


_**S/Susan E. Schwab**_
Susan E. Schwab
United States Magistrate Judge